UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN DAVID GRACZYK and PAUL
JAY LETTINGA,

    Defendants.
    _____/

File No. 1:13-CR-97

HON. ROBERT HOLMES BELL

**O P I N I O N**

On May 22, 2013, Defendants John David Graczyk and Paul Jay Lettinga were indicted on one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and three counts of making a false statement to the Social Security Administration ("SSA") in violation of 42 U.S.C. §§ 408(a)(3), 408(b)(1), & 422(c)(5), and 18 U.S.C. § 2. (Dkt. No. 1.) Graczyk pleaded guilty to all counts on July 8, 2013. (Dkt. No. 23.) On July 10, 2013, Lettinga filed a motion to suppress his statements and a motion for disclosure of the identity of the government's confidential information. (Dkt. Nos. 25-26.) The government has since provided Lettinga with the identify of the informant (*see* Dkt. No. 32), thus the motion for disclosure will be denied as moot. Because, as discussed below, the motion to suppress lacks merit, it will also be denied.

**I.**

According to the government, it received information that Graczyk was earning substantially more income as an employee of Yankee Springs Dairy Farm in Middleville, Michigan than was being reported to the SSA for purposes of determining his eligibility for disability benefits. (Dkt. No. 33, Resp. Br. at PageID# 114.) According to this information, Graczyk was allegedly hiding his earnings by having the Yankee Springs Dairy Farm pay most of his monthly wages under his wife's name and social security number so that he would continue to receive monthly disability benefit payments. (*Id.*) On August 23, 2012, special agents Adam Lowder and Brian Reitz of the SSA Office of Inspector General went to the Yankee Springs Dairy Farm to investigate Graczyk's work activity and pay. (Dkt. No. 25, Mot. at PageID# 54; Dkt. No. 33, Resp. Br. at PageID# 113.)

When they arrived, the agents identified themselves and asked Lettinga if he would speak to them in the parking area near the barn. No *Miranda* warnings were provided. (Dkt. No. 25, Mot. at PageID# 55; Dkt. No. 33, Resp. Br. at PageID# 115.) During this interview, Lettinga admitted that he paid some of Graczyk's wages to his wife so that Graczyk could preserve his disability benefits. (Dkt. No. 33, Resp. Br. at PageID# 113.) Following the interview, Lettinga returned to work.

**II.**

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of

2

procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Berkeme v. McCarty*, 468 U.S. 420, 428 (1984).

"[I]n order for *Miranda* to apply, the suspect must either be actually taken into custody or the restraint on his freedom must rise to the level associated with a formal arrest." *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998) (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). The mere fact that questioning takes place in a "coercive environment" is insufficient to constitute custody:

> [A] noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question.

*Oregon v. Mathiason*, 429 U.S. 492, 495 (1977); *see also United States v. Phillip*, 948 F.2d 241, 247 (6th Cir. 1991) ("Coercive environments not rising to the level of formal arrest or restraint on freedom of movement do not constitute custody within the meaning of *Miranda*.").

"Two discrete inquiries are essential to the [in custody] determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances,

3

would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The Sixth Circuit has identified particular circumstances which guide this analysis: "the location of the interview; the length and manner of questioning; whether the individual possessed unrestrained freedom of movement during the interview; and whether the individual was told she need not answer the questions." *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (citing *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003)).

### III.

Assuming all of the facts alleged in Lettinga's motion and accompanying brief are true, the circumstances of his interrogation do not rise to the level of custody. First, Lettinga concedes that the interview occurred outside at his place of work, and not in a police station interrogation room, or location otherwise associated with custody. *See United States v. Mahan*, 190 F.3d 416, 421-22 (6th Cir. 1999) (holding that a workplace interview conducted in both an office and a conference room was non-custodial); *United States v, Crossley*, 224 F.3d 847, 861-62 (6th Cir. 2000) (holding that a workplace interview conducted in a classroom was non-custodial). The fact that the agents showed up unannounced and introduced themselves in a public place as federal agents is irrelevant to this analysis. *See, e.g.*, *Crossley*, 224 F.3d at 861 (holding that the fact that the defendant was summoned "unexpectedly" to her work's administrative office to be questioned by FBI agents did not result in a finding of custody).

4

Second, by all accounts the interview was short. While Lettinga's brief does not state exactly how long the agents asked him questions, it does not imply that it was a lengthy period of time. Moreover, according to the government, the interview lasted only thirty minutes. (Dkt. No. 133, Resp. Br. at PageID# 115.) The Sixth Circuit has found interviews lasting up to 90 minutes to be non-custodial. *See Panak*, 552 F.3d at 467 (finding that an interview lasting between 45 minutes and one hour "compares favorably" to other encounters the Sixth Circuit had previously deemed non-custodial) (citing *Crossley*, 224 F.3d at 862 (concerning an interview lasting less than one hour); *Mahan* 190 F.3d at 422 (concerning an interview lasting 90 minutes)).

Third, the nature of the questioning does not reflect a custodial interrogation. There is no allegation, other than a vague statement that the agents "demanded" that Lettinga pay attention to them (Dkt. No. 25, Mot. at PageID# 54), that the agents used a non-conversational tone or that they ever threatened Lettinga. While there is an allegation that the agents challenged the truthfulness of Lettinga's answers (*Id.* at PageID# 55), there is nothing unusual or coercive about pressing an interview subject to tell the truth. *See Mahan*, 190 F.3d at 422-23 ("Mahan alleges that Agent Walsh coerced him into admitting his role in the crime by telling him that he could get into serious trouble for providing false information and that his story was unbelievable. We disagree.") *United States v. Brinson*, 85-5308, 1986 WL 16715, at *2 (6th Cir. Mar. 4, 1986) (per curiam) ("[E]ncouraging her to tell the truth is no more than affording her the chance to make an informed decision with

respect to her cooperation with the government.") (quoting *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978)).

Fourth, Lettinga does not allege that he was hand-cuffed or physically restrained in any way. As stated, he concedes that he was interviewed outside in an open location. (Dkt. No. 25, Mot. at PageID# 56.) These circumstances are substantially similar to those in *Panak* which the Sixth Circuit found to establish unrestrained freedom of movement:

> During the interview, the officers did not handcuff Panak or physically restrain her, and they did not otherwise limit her freedom of movement. *See Swanson*, 341 F.3d at 530; *Crossley*, 224 F.3d at 862; *Salvo*, 133 F.3d at 951. She was never told that she could not leave, that she could not ask the investigators to leave or that she was required to answer their questions. Nobody raised his voice, the investigators did not possess, much less brandish, firearms or handcuffs . . . .

*Panak*, 552 F.3d at 467. There is one difference from *Panak*: the agents in this case were carrying firearms. (Dkt. No. 33, Resp. Br. at PageID# 118.) However, the Court finds this difference immaterial. It is unclear whether these firearms were even visible, considering the fact that Lettinga did not mention them in his brief. More importantly, there is no allegation that an agent ever brandished, touched, or drew attention to the presence of the firearms.

The only circumstance which points toward a finding of custody is the fact that the agents never told Lettinga that he did not need to answer their questions. However, this circumstance is not dispositive. *See Panak*, 552 F.3d at 467 ("[T]he existence of such advice is one factor among many, and we have never held that it is a necessary condition . . . before

officers may question an individual in a non-custodial setting."). In *Panak*, the Sixth Circuit concluded that, despite the absence of such advice, all of the circumstances considered together indicated that a reasonable person in the defendant's situation would have felt free to terminate the interview. *Id.* at 468. Similarly, the totality of circumstances in this case indicate that the interview "retained a non-custodial hue throughout," *Panak*, 552 F.3d at 466, and that a reasonable person in Lettinga's position would have felt free to terminate the interview.

In conclusion, under the present circumstances, a reasonable person would have felt he or she was free to terminate the interrogation and leave. Because Lettinga was not in custody, *Miranda* warnings were not required.

An order consistent with this opinion will be entered.


Dated: August 19, 2013                    /s/ Robert Holmes Bell
                                          ROBERT HOLMES BELL
                                          UNITED STATES DISTRICT JUDGE